1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**WESTERN DIVISION**

11
12

JUDITH ANNE PRICCO,                    )          No. CV 13-8713-PLA
                                       )
13

            Plaintiff,                 )
                                       )
14

      v.                               )          **MEMORANDUM OPINION AND ORDER**
                                       )
15

CAROLYN W. COLVIN,                     )
ACTING COMMISSIONER OF SOCIAL          )
16

SECURITY ADMINISTRATION,               )
                                       )
17

            Defendant.                 )
_____ )
18
19

**I.**

20

**PROCEEDINGS**

21          Plaintiff filed this action on December 4, 2013, seeking review of the Commissioner's denial

22   of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before

23   the undersigned Magistrate Judge on January 6, 2014, and January 15, 2014.  Pursuant to the

24   Court's Order, the parties filed a Joint Stipulation on August 15, 2014, that addresses their

25   positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation

26   under submission without oral argument.

27
28

1

## II.

2

## **BACKGROUND**

3        Plaintiff was born on March 11, 1966. [Administrative Record ("AR") at 31, 144.] She has

4   at least a high school education and past relevant work experience as a bulk food packager. [AR

5   at 30, 74.]

6        On August 18, 2010, plaintiff filed an application for a period of disability and Disability

7   Insurance Benefits alleging that she has been unable to work since June 24, 2009. [AR at 24,

8   153.] After the application was denied initially, she filed a timely request for a hearing before an

9   Administrative Law Judge ("ALJ"). [AR at 24, 85-86.] A hearing was held on January 18, 2012,

10  at which time plaintiff appeared represented by her mother, Cheryl Pricco, a non-attorney

11  representative [AR at 38-39],[1] and testified on her own behalf. [AR at 24, 38-39, 40-73.] Plaintiff's

12  mother, and a vocational expert ("VE"), also testified. [AR at 24, 71-76.] On February 24, 2012,

13  the ALJ issued a decision concluding that plaintiff was not under a disability from June 24, 2009,

14  through the date of the decision. [AR at 24-32.] Plaintiff requested review of the ALJ's decision

15  by the Appeals Council. [AR at 17-18.] On September 23, 2013, the Appeals Council denied

16  review. [AR at 5-10.] This action followed.

17

18

## III.

19

## **STANDARD OF REVIEW**

20       Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

21  decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

22  evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

23  F.3d 1228, 1231 (9th Cir. 2010).

24

25

26       [1]   Plaintiff takes issue with the ALJ's classification of plaintiff's mother as her non-attorney

27  representative, asserting that she was "essentially unrepresented because the ALJ classifies [her

mother] as a 'witness' and even goes as far as rejecting Cheryl Pricco's testimony." [JS at 4 n.2.]

28  This issue has no bearing on the Court's decision.

2

1 | "Substantial evidence means more than a mere scintilla, but less than a preponderance;
2 | it is such relevant evidence as a reasonable mind might accept as adequate to support a
3 | conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)
4 | (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
5 | 1998) (same).   When determining whether substantial evidence exists to support the
6 | Commissioner's decision, the Court examines the administrative record as a whole, considering
7 | adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);
8 | see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must
9 | consider the entire record as a whole and may not affirm simply by isolating a specific quantum
10 | of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is
11 | susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,
12 | 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec.
13 | Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or
14 | reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of
15 | the ALJ.").

16 |
17 | IV.
18 | **THE EVALUATION OF DISABILITY**
19 | Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
20 | to engage in any substantial gainful activity owing to a physical or mental impairment that is
21 | expected to result in death or which has lasted or is expected to last for a continuous period of
22 | at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th
23 | Cir. 1992).

24 |
25 | **A.    THE FIVE-STEP EVALUATION PROCESS**
26 | The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
27 | whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
28 | 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

1   determine whether the claimant is currently engaged in substantial gainful activity; if so, the
2   claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in
3   substantial gainful activity, the second step requires the Commissioner to determine whether the
4   claimant has a "severe" impairment or combination of impairments significantly limiting her ability
5   to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
6   If the claimant has a "severe" impairment or combination of impairments, the third step requires
7   the Commissioner to determine whether the impairment or combination of impairments meets or
8   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt.
9   P, app. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's
10  impairment or combination of impairments does not meet or equal an impairment in the Listing,
11  the fourth step requires the Commissioner to determine whether the claimant has sufficient
12  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the
13  claim is denied. Id. The claimant has the burden of proving that she is unable to perform past
14  relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case
15  of disability is established.  The Commissioner then bears the burden of establishing that the
16  claimant is not disabled, because she can perform other substantial gainful work available in the
17  national economy.  The determination of this issue comprises the fifth and final step in the
18  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
19  F.2d at 1257.

20

21  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

22          In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful
23  activity since her alleged onset date, June 24, 2009.[2] [AR at 26.] At step two, the ALJ concluded
24  that plaintiff has the severe impairment of depressive disorder, not otherwise specified. [Id.] At
25  step three, the ALJ determined that plaintiff does not have an impairment or a combination of

26

27  _____

28          [2]   The ALJ concluded that plaintiff meets the insured status requirements of the Social
    Security Act through December 31, 2014. [AR at 26.]

4

1  impairments that meets or medically equals any of the impairments in the Listings.[3]  [Id.]  The ALJ

2  further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform a full range

3  of work at all exertional levels, but with the following nonexertional limitations:  plaintiff is limited

4  to simple work, cannot have public contact, and can have occasional contact with peers and

5  supervisors.  [Id.]  At step four, based on plaintiff's RFC and the VE's testimony, the ALJ

6  concluded that plaintiff "is capable of performing past relevant work as a bulk food packager."  [AR

7  at 30.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from June 24,

8  2009, through the date of the decision.  [AR at 32.]

9

10                                                           **V.**

11                                         **THE ALJ'S DECISION**

12          Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence

13  or free of legal error.  [Joint Stipulation ("JS") at 4.]  Specifically, plaintiff contends that the ALJ

14  impermissibly rejected the opinions of her treating physicians in finding that plaintiff can perform

15  simple work with no public contact and occasional contact with peers and supervisors.  [JS at 4-

16  15, 22-23.]  As explained below, the Court agrees with plaintiff and remands the matter for further

17  proceedings.

18

19  **A.     EVALUATION OF MEDICAL EVIDENCE**

20          Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting

21  the June 28, 2010, report of treating psychiatrist, Thomas Curtis, M.D. [JS at 10-14], and the May

22  4, 2011, opinion of treating psychologist, Jim Grace, Ph.D.  [JS at 6-7].

23

24

25          [3]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

26          [4]    RFC is what a claimant can still do despite existing exertional and nonexertional
     limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
27  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
     the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
28  1151 n.2 (9th Cir. 2007).

1       "There are three types of medical opinions in social security cases: those from treating

2 physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.

3 Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a

4 general rule, more weight should be given to the opinion of a treating source than to the opinion

5 of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec.,

6 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled

7 to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan,

8 528 F.3d at 1198.

9       "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical

10 opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation

11 marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where

12 such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons

13 that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal

14 quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite

15 specific and legitimate standard "by setting out a detailed and thorough summary of the facts and

16 conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157

17 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than

18 the [treating or examining] doctors', are correct." Id.

19

20       **1.**     **Background and Opinions of Plaintiff's Treating Doctors**

21       On June 24, 2009, plaintiff was hospitalized at Aurora Behavioral Hospital in Covina. [AR

22 at 27, 265.] She was found to be immobilized, overwhelmed, and withdrawn. [AR at 265.] She

23 was diagnosed with anxiety and situational depression. [Id.] Plaintiff was hospitalized for five

24 days and, upon release, entered into an outpatient program. [Id.]

25       Plaintiff was again hospitalized in August 2009 for five days at the same facility, and this

26 time she was diagnosed with PTSD. [AR at 27, 265-66.] Upon release, she re-entered the

27 outpatient therapy program, attending in September and October 2009. [Id.]

28

1    Plaintiff treated with Dr. Curtis from September 29, 2009, through February 7, 2012, in
2    connection with her worker's compensation claim. [AR at 215-58, 313-20.] On June 28, 2010,
3    Dr. Curtis provided a "Primary Treating Physician's Evaluation and Permanent and Stationary
4    Report with Psychological Test Results and with a Request for Authorization for Further
5    Psychiatric Treatment." [AR at 224.] He reviewed plaintiff's work history, including the issues that
6    led to her seeking care for her emotional symptoms, which included depression; anxiety;
7    withdrawal; irritability; impatience; disturbed sleep; diminished self esteem; feelings of
8    worthlessness, emptiness, inadequacy, and pessimism; dizziness; palpitations; and abdominal
9    distress, especially whenever her workplace was mentioned or thought about. [AR at 225-27.]
10   Dr. Curtis stated that although plaintiff appeared to make progress with the psychiatric and
11   psychological treatment she received, her symptoms worsened and she was hospitalized for a
12   second time in August 2009 when she heard that her employers wanted to meet with her. [AR
13   at 227-28.] As part of his evaluation, Dr. Curtis completed a mental status examination in which
14   he detailed the following symptoms:  guarded presentation with visible depression; rambling,
15   distressed speech; anxious thought process; depleted appearance due to depression; diminished
16   cognitive functioning; distracted and defective in concentration, attention, and short-term memory;
17   forgetful of recent conversations; attention drifts; and difficulty staying focused on one task. [AR
18   at 231.] He opined that it "appeared most likely" that plaintiff's cognitive deficits were caused by
19   "overwhelmed psychological coping mechanisms." [Id.] Dr. Curtis also noted that plaintiff was
20   oriented to the day of the week and date; could not retain recollection for a few minutes of three
21   simple items; could not accurately perform simple calculations; was not sufficiently able to
22   accurately recall past serial U.S. presidents; and her capacity for psychological insight and good
23   psychological judgment were essentially unimpaired. [AR at 231-32.]

24        Dr. Curtis administered various and numerous psychological tests. [AR at 232-36.] The
25   results of the Beck Anxiety Inventory revealed a severe level of anxiety; the results of the Beck
26   Hopelessness Scale revealed a moderate level of hopelessness; the results of the Minnesota
27   Multiphasic Personality Inventory revealed a valid profile for depression; and the results of the
28   Multiscore Depression Inventory revealed severe depression.   [AR at 234-36.]   Dr. Curtis

1 || concluded that plaintiff's psychological test results "confirmed residual abnormal levels of anxiety,

2 || hopelessness and depression with low energy, cognitive impairment, guilt, low self-esteem, social

3 || introversion, pessimism and a sad mood." [AR at 237.] He diagnosed her with Depressive

4 || Disorder, Not Otherwise Specified, with anxiety, post-traumatic reaction and psychiatric episodes

5 || of dissociation with amnesia, and assessed a Global Assessment of Functioning Score of 45. [AR

6 || at 237-38.][5] He concluded that plaintiff was temporarily totally disabled on an emotional basis

7 || from her last day of work on June 23, 2009, to the date of his report and continuing until her

8 || condition becomes more stabilized "in the near future." [AR at 241.] He opined that there may

9 || be some further slow change in a positive direction, but that it would not be expected that "further

10 || substantial recovery or deterioration would be anticipated in the next year beyond the estimate

11 || of permanent emotional impairment set forth below [in his report,] assuming the provision of

12 || continuing supportive psychotherapy on an as-needed basis." [Id.]. He found no fiscal incentives

13 || or malingering for secondary gain. [Id.] He indicated that plaintiff suffered from a moderate

14 || impairment in activities of daily living and concentration, persistence and pace; and a marked

15 || limitation in social functioning and adaptation (deterioration or decompensation in complex work-

16 || like settings). [AR at 242.]

17 On December 1, 2010, Dr. Grace, a psychologist with the California Counseling Center,

18 || wrote a six-page letter describing plaintiff's condition at that time, detailing her work history and

19 || the factors that eventually led to her leaving her job and subsequent hospitalizations. [AR at 263-

20 || 68.] After the second hospitalization, plaintiff started seeing Dr. Grace, receiving treatment three

21 || to four times per month in relation to her worker's compensation action.[6] [AR at 266.] Dr. Grace

---

23    [5]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the
24 individual's overall level of functioning. It is rated with respect only to psychological, social, and
occupational functioning, without regard to impairments in functioning due to physical or
25 environmental limitations. See American Psychiatric Association, Diagnostic and Statistical
Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000). A GAF score in the range of 41-50
26 indicates serious symptoms or any serious impairment in social, occupational, or school
functioning (e.g., unable to keep a job). DSM-IV, at 34.

27
      [6]   There was testimony from plaintiff's mother that Dr. Grace was plaintiff's doctor even
28                                                                          (continued...)

8

1   stated that plaintiff was making "steady progress toward recovery in practically all her regular"

2   activities of daily living; her PTSD symptoms had "greatly lessened"; she practices her cognitive

3   behavioral therapy; she is improving her assertiveness in relating with others, including family

4   members; she enjoys supporting her fifteen-year-old daughter in school and dancing; she still has

5   difficulty with work-related involvement or material and her PTSD symptoms are triggered by work-

6   related discussions or situations, i.e., her symptoms are "situational & work related"; and the

7   "influence stemming from her work-related stress would have to be deemed minimal in impact,"

8   on her interpersonal interactions outside of work. [AR at 267.]

9        On May 4, 2011, Dr. Grace wrote a one-page letter stating that he had been treating

10   plaintiff regularly since September 2, 2009, pursuant to her traumatic experience at work. [AR at

11   269.] He also noted that although plaintiff had made some gains in terms of daily functioning, she

12   "continues to show symptoms of depression, anxiety, withdrawal, poor concentration,

13   immobilization & low motivation." [Id.] She still needs "the assistance of a medication regimen,"

14   taking Prozac and Wellbutrin, and "the lack of closure to her Work. Comp. case has not assisted

15   her progress." [Id.] Dr. Grace found plaintiff "to be temporarily disabled & unable to proceed with

16   her life & gainful employment." [Id.] Dr. Grace treated plaintiff from September 2009 through

17   January 2012. [AR at 263-69, 322-431.]

18

19        **2.    The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the
            Opinions of Dr. Curtis**

20

21        The ALJ gave limited weight to the opinions of Dr. Curtis because (1) his "extremely

22   restrictive limitations" are not supported by the evidence; (2) there is no evidence that plaintiff

23   "requires around-the-clock in-home support services because of her mental impairment; and (3)

24   Dr. Curtis' opinion is "contradicted by Dr. Grace's December 2010 letter stating that the claimant

25

26   _____

        [6](...continued)

27   before the worker's compensation action was initiated. [AR at 53 ("Dr. Grace was her doctor

28   before the workman's comp attorney . . . [and] Dr. Grace stayed on board because it wasn't
     advisable to switch her from that doctor.").]

1  had varied activities of daily living and that the claimant's post-traumatic stress disorder symptoms

2  had greatly lessened." [AR at 29.]  The Court finds that these reasons are not specific and

3  legitimate or supported by substantial evidence.

4

5  ### a.  Dr. Curtis' Opinions Are Supported by the Evidence

6  Plaintiff was hospitalized twice in 2009 for five days each time. [AR at 265.] In June 2010,

7  Dr. Curtis, plaintiff's treating psychiatrist from September 29, 2009, through February 7, 2012 [AR

8  at 217-23, 313-20], administered an extensive battery of psychological tests. [AR at 215-58.] In

9  fact, Dr. Curtis is the only physician of record to administer such tests.[7]

10  Additionally, Dr. Curtis' report and findings are consistent with his own treatment notes.

11  For instance, in December 2009, Dr. Curtis reported that plaintiff had visible anxiety and

12  depressed expressions [AR at 27 (citing AR at 222)], and in March 2010, Dr. Curtis noted

13  emotional withdrawal and visible anxiety [AR at 28 (citing AR at 220)].  Other treatment records

14  later submitted to the Appeals Council and, therefore, not before the ALJ, show that Dr. Curtis

15  made similar observations on various dates between June 2010 and February 2012. [See, e.g.,

16  AR at 315 (February 7, 2012: emotional withdrawal, visible anxiety), 316 (August 1, 2011: visible

17  anxiety, depressed expressions), 317 (April[8] 26, 2011:  emotional withdrawal, visible anxiety,

18  depressed expressions), 318 (November 16, 2010: emotional withdrawal, visible anxiety), 319

19  (April[9] 2, 2010: emotional withdrawal, visible anxiety), 320 (June 29, 2010: emotional withdrawal,

20  visible anxiety).]  In June 2010, Dr. Curtis completed his permanent and stationary report,

21  including the results of numerous psychological tests. [AR at 224-58.]  Dr. Curtis diagnosed

22

23

24

25  [7]  Dr. Bagner, the consulting examiner to whom the ALJ assigned "some weight," relied only

26  on his review of Dr. Curtis' report and his own March 14, 2011, mental status examination of
plaintiff. [AR at 280-83.]

27  [8]  Although somewhat unclear, the date on this note appears to be 4/26/11.  [AR at 317.]

28  [9]  Although somewhat unclear, the date on this note appears to be 4/2/10.  [AR at 319.]

1  plaintiff with depressive disorder, not otherwise specified, and assessed a GAF score of 45,[10]

2  finding she had moderate limitations in maintaining concentration, persistence, or pace, and a

3  marked limitation in adaptation. [Id.] Based on his extensive testing, Dr. Curtis found plaintiff

4  temporarily totally disabled on an emotional basis from her last day of work on or about June 23,

5  2009, to the time of his evaluation and continuing until her condition becomes more stabilized.

6  [AR at 241.]

7        Accordingly, Dr. Curtis' findings are supported by the evidence and this was not a specific

8  and legitimate reason for discounting Dr. Curtis' opinion.

9

10            **b.**    **Around-the-Clock In-Home Support**

11       The ALJ also rejected Dr. Curtis' opinion because there was no evidence that plaintiff

12 needed "around-the-clock" in-home support services. [AR at 29.] However, Dr. Curtis does not

13 suggest that such services were warranted. Nor are such services required for a finding of

14 disability. Moreover, the Ninth Circuit has made it clear that a claimant need not be "utterly

15 incapacitated to be eligible for benefits . . . ." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)

16 (internal citations omitted).

17       Accordingly, this was not a specific and legitimate reason for discounting Dr. Curtis'

18 opinion.

19

20            **c.**    **Dr. Curtis' Opinions are Consistent with Dr. Grace's 2010 Letter and**

21                     **Plaintiff's Alleged Daily Activities**

22       The ALJ rejected Dr. Curtis' opinion because it was contradicted by Dr. Grace's December

23 2010 letter, which indicated that plaintiff engaged in varied activities of daily living and that her

24 post-traumatic stress disorder symptoms had greatly lessened. [AR at 29.]

25 _____

26   [10]   The ALJ used the difference between Dr. Curtis' GAF assessment of 45 and Dr. Bagner's GAF assessment of 60 as evidence supporting the ALJ's finding that Dr. Curtis' opinion was not

27 supported by the evidence. Because the Court finds that other sufficient evidence supported Dr. Curtis' opinions, the Court declines to consider the implication, if any, of the difference between

28 these GAF scores.

1 As will be discussed in more detail below [see supra, Part V.A.3.a], the Court finds that the
2 ALJ improperly characterized Dr. Grace's December 2010 letter, as well as plaintiff's ability to
3 perform her activities of daily living as contrasted with her continued symptoms when faced with
4 work-like situations or thoughts.

5 This reason for rejecting Dr. Curtis' opinion, therefore, fails based on that reasoning. It was
6 not a specific and legitimate reason for discounting Dr. Curtis' opinion.

7

8 **3.    The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the
        May 2011 Opinions of Dr. Grace**
9

10 The ALJ gave "significant weight" to the December 2010 opinion of Dr. Grace, "because
11 he provided a detailed description of the claimant's symptoms." [Id.] He gave "limited weight" to
12 Dr. Grace's May 2011 letter because (1) "it is not consistent with the overall record, including the
13 claimant's testimony and the testimony of the claimant's mother," and (2) the ALJ found it
14 troubling that Dr. Grace reported "fairly good functioning in December 2010," and "poor functioning
15 in May 2011 without providing any reason for the change." [AR at 29.]

16

17 **a.    Dr. Grace's May 2011 Letter Is Consistent with the Overall Record**

18 A review of the record shows that Dr. Grace's May 2011 opinion was not "inconsistent with
19 the overall record." In fact, given the evidence of record, that opinion appears to be entirely
20 consistent with Dr. Curtis' findings and, contrary to the ALJ's finding, not inconsistent with Dr.
21 Grace's December 2010 findings.

22 Dr. Grace's earlier December 2010 report indicated that plaintiff had steadily improved with
23 regard to her regular activities of daily living, and that she had also improved her assertiveness
24 in dealing with others. However, contrary to the ALJ's assertion that Dr. Grace, in his 2010 report,
25 "specifically stated that any influence stemming from [plaintiff's] work-related stress would have
26 to be deemed minimal in impact" [AR at 28], read in context, what Dr. Grace actually stated was
27 that plaintiff's "*deeply* stressed behavior" is "situational & work related," that "[e]ven discussion of
28 treatment at work or returning to work site bring[s] a reaction," but that this reaction did not appear

1  to carry over into her interactions "*outside of work related situations*," to affect her interpersonal

2  interactions with others, including her family. [AR at 267 (emphases added.] Dr. Grace then

3  concluded that "[a]ny influence [*on plaintiff's family interactions*] from [plaintiff's] work-related

4  stress would have to be deemed minimal in impact." [Id.] This statement is significantly different

5  from the ALJ's suggestion that Dr. Grace opined that plaintiff's work-related stress generally has

6  minimal impact or influence on her life.

7  Moreover, notwithstanding any improvement in her activities of daily living, Dr. Grace's

8  December 2010 report also noted plaintiff's "difficulty with work related . . . involvements or

9  material," and reported that plaintiff was still experiencing "panic, shaking, palpitations, vomiting,

10 etc." when confronted with work-related situations. [Id.] He stated that when admitted to Aurora

11 Behavioral Hospital in June 2009, plaintiff was "immobilized, overwhelmed & withdrawn," and was

12 diagnosed with anxiety and situational depression. [AR at 265.] Her symptoms when hospitalized

13 in August 2009 for a second time were "mainly depressive in nature and were similar to [the] June

14 episode." [Id.] Dr. Grace's May 2011 letter is consistent with these statements in that it reflects

15 that plaintiff still experiences symptoms of depression, anxiety, withdrawal, poor concentration,

16 immobilization, and low motivation. [AR at 269.] Additionally, as discussed in more detail below,

17 Dr. Grace's own treatment notes between January and May 2011 are consistent with these

18 findings. [See discussion supra Part V.A.3.b.]

19 Nor are Dr. Grace's opinions inconsistent with plaintiff's or her mother's testimony. Plaintiff

20 reported that she was able to drive her daughter to school, go to her daughter's performances,

21 do some light chores, assist with cleaning, do some gardening, play with her dogs, and shop [AR

22 at 29 (citing AR at 176-83, 263-69)], and Dr. Grace indicated plaintiff had made progress with

23 regard to her regular activities of daily living in his December 2010 report [AR at 266], as well as

24 in his May 2011 report, which also indicated plaintiff had made some gains "in terms of daily

25 functioning." [AR at 269.] In fact, Dr. Grace's December 2010 and May 2011 reports, and Dr.

26 Curtis' June 2010 report, all portray plaintiff as a person who, although she suffers from PTSD,

27

28

1  depression, and anxiety, is generally capable of performing her activities of daily living but suffers

2  a severe increase of symptoms when confronted with *work-related situations or stresses.*[11]

3          Based on the foregoing, this too was not a specific and legitimate reason, supported by

4  substantial evidence of record, for discounting the opinions of Dr. Grace.

6          **b.    Dr. Grace's Treatment Notes Provide Evidence of Plaintiff's Functioning**
               **Between December 2010 and May 2011**

8          The ALJ states that it is "troubling" that Dr. Grace's December 2010 report shows "fairly

9  good" functioning, but that the May 2011 report reflects "poor functioning," without providing any

10  reason for the change. [AR at 29.]

11         Preliminarily, for the reasons discussed above, the Court does not agree that the

12  December 2010 report shows "fairly good" functioning overall, or that these two reports actually

13  show a significant difference in functioning. Although Dr. Grace's December 2010 report certainly

14  is more detailed than his later report, both reflect Dr. Grace's opinion, as discussed above, that

15  plaintiff experiences mental health symptoms when confronted with work-related stresses, yet had

16  otherwise been making improvement in her daily living functions. Moreover, various treatment

17  notes from Dr. Grace, submitted to the Appeals Council and made part of the record,[12] provide

---

19    [11]   With regard to her subjective symptoms, plaintiff testified that she could sleep all day and

20  stay isolated, and has a hard time completing simple things. [AR at 67, 70.] Her mother testified
    that plaintiff is a completely different person, does not even have enough confidence anymore to

21  answer the phone, and has no friends and no social life. [AR at 71.] While these statements may
    have some relevance with respect to plaintiff's and her mother's credibility when contrasted with

22  plaintiff's activities of daily living, neither Dr. Grace nor Dr. Curtis found marked impact on
    plaintiff's daily activities from her work-related PTSD. Moreover, the ALJ found that plaintiff's

23  "credibility is poor," without ever specifically stating what complaints he found to be less than
    credible. The ALJ at least implicitly appeared to discount plaintiff's subjective complaints such

24  as her desire to be isolated or to sleep all day, while accepting her statements regarding her

25  activities of daily living. [AR at 29.]

26    [12]   When the Appeals Council "considers new evidence in deciding whether to review a
    decision of the ALJ, that evidence becomes part of the administrative record, which the district

27  court must consider when reviewing the Commissioner's final decision for substantial evidence."

28  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). When the Appeals
                                                                                    (continued...)

1 | evidence that between January and June 2011, plaintiff was continuing to experience subjective
2 | symptoms. [See, e.g., AR at 337 (June 13, 2011: back on Prozac and Wellbutrin; wants to put
3 | her life back together; wants to get over depression; fearful of doing wrong; wants to get back to
4 | being more confident and more able to enjoy things); AR at 338 (May 9, 2011: Dr. Grace's mental
5 | status examination on that date showed that plaintiff was still depressed, anxious, having difficulty
6 | concentrating on steps to take, and co-dependent, although she was having a positive response
7 | to cognitive behavioral therapies); AR at 341 (April 27, 2011: "good days & bad days;" "while
8 | focus is on satisfying activities doing OK but when down time or no focus frequent crying;"
9 | difficulty getting things done; hard to get involved; "[s]till not back to desired state")]; AR at 342
10 | (March 15, 2011: "on [a] Recov scale 1-10 I'm a 0/10"; "[L]ife up in the air a lot"; "Little stuff
11 | annoying me"); AR at 344 (March 28, 2011: "Have felt more relief at stating my case at hearing";
12 | "felt good re the way I said my piece"); AR at 349 (January 13, 2011: still having some negative
13 | feelings; lack of motivation).]

14 |     The Commissioner argues that these same records submitted to the Appeals Council
15 | "actually support the ALJ's decision," because they show that plaintiff "had an upcoming job
16 | interview, was walking her dogs every other day, was re-doing her house, and had limitations on
17 | finding a job because of her dogs but was nonetheless exploring different job possibilities. (JS
18 | at 20 (citing AR at 338, 342, 345, 348, 349). The Court does not agree with this characterization,
19 | especially given the records discussed above that show continuing symptoms. In fact, the records
20 | cited by defendant to support this proposition actually show that many of these notes were not a
21 | reflection of an increase in plaintiff's functioning, but were things that were being explored
22 | between Dr. Grace and plaintiff as "where to go from here" goals or action items. For instance,
23 | on May 9, 2011, possible goals suggested during the treatment session were to explore Citrus
24 | College or Cal Poly for courses as a vet assistant or park ranger. [AR at 338.] This same note,
25 | written after Dr. Grace's second letter, also indicated that Dr. Grace's mental status examination

26

27 | <sup>12</sup>(...continued)
Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and
28 | the district court reviews that decision for substantial evidence based on the record as a whole.
Id. at 1161-62.

1 | of that date found plaintiff still depressed, anxious, having difficulty concentrating on the steps to

2 | take, and co-dependent. [Id.] On March 28, 2011, although plaintiff reported no developments

3 | on the job front because of her dogs, she also described herself as a 0 on a recovery scale of 1-

4 | 10, frustrated, depressed and anxious. [AR at 342.] A February 7, 2011, note only cryptically

5 | reports: "Redoing house" with no further explanation. [AR at 345.] That note, along with the

6 | January 10, 2011, note, reflects that plaintiff may have had a job interview in Long Beach for a

7 | sales position, although the Court finds no further mention of that interview in the record. [AR at

8 | 345, 348.] Finally, walking her dog every other day was also just a "what's next" goal for plaintiff

9 | in a January 3, 2011, note. [AR at 349.]

10 | Based on the foregoing, this was not a specific and legitimate reason, supported by

11 | substantial evidence of record, for discounting the May 2011 opinion of Dr. Grace.

12 |

13 | **4.    The ALJ Failed to Provide Adequate Explanation for the Controlling Weight
     Given to the Opinions of the Consulting Examiner and the Non-Examining**

14 | **Psychologist**

15 | If a treating physician's opinion is not giving controlling weight because it is not well

16 | supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

17 | instructed to consider the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what

18 | weight to accord the opinion of the treating physician. 20 C.F.R. § 404.1527(c). Those factors

19 | include the "[l]ength of the treatment relationship and the frequency of examination" by the treating

20 | physician; and the "nature and extent of the treatment relationship" between the patient and the

21 | treating physician.    Id. § 404.1527(c)(2)(i)-(ii).    When an examining physician provides

22 | independent clinical findings that differ from the findings of the treating physician, such findings

23 | are substantial evidence. Tonapetyen v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Orn v.

24 | Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent

25 | clinical findings that differ from the findings of the treating physician, such findings are substantial

26 | evidence). "The opinion of a nonexamining physician cannot by itself constitute substantial

27 | evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at

28 | 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining

1  physician's opinion "with nothing more" did not constitute substantial evidence). However,
2  "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a
3  nontreating source is based on independent clinical findings that differ from those of the treating
4  physician, the opinion of the nontreating source may itself be substantial evidence." Andrews v.
5  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Independent clinical findings include "(1) diagnoses
6  that differ from those offered by another physician and that are supported by substantial evidence,
7  or (2) findings based on objective medical tests that the treating physician has not herself
8  considered." Orn, 495 F.3d at 632 (internal citations omitted).

9      Here, the ALJ gave "some weight" to the March 14, 2011, opinion of Ernest Bagner, M.D.,
10  the psychiatric consultative examiner, and to the April 6, 2011, report of Deborah Hartley, Ph.D.,
11  the State agency reviewing psychologist. [AR at 29, 280-83, 286-99, 300-02.]

12      On March 14, 2011, Dr. Bagner found plaintiff presented as fully oriented, with a depressed
13  mood, intact and coherent speech, tight thought processes, of average intelligence, with normal
14  reality contact, and no suicidal or homicidal ideation. [AR at 281-82.] Plaintiff reported to Dr.
15  Bagner that she bathed and dressed herself, did household chores, and drove herself. [AR at
16  281.] Dr. Bagner performed a mental status examination and diagnosed depressive disorder, not
17  otherwise specified, and assessed a GAF score of 60, finding no more than mild or moderate
18  limitations. [AR at 282-83.]

19      After reviewing Dr. Bagner's March 2011 report, and limited portions of Dr. Curtis' June
20  2010 report, Dr. Hartley in her April 6, 2011, report found that plaintiff had mild limitations in
21  activities of daily living, moderate limitations in maintaining social functioning and concentration,
22  persistence, and pace, and no episodes of decompensation of extended duration. [AR at 296.]
23  Dr. Hartley concluded that plaintiff could perform simple tasks with routine supervision, relate to
24  supervisors and peers on a superficial work basis, could not relate to the general public, and could
25  adapt to a work situation. [AR at 302.]

26      Both Dr. Bagner and Dr. Hartley agreed that plaintiff could perform simple work, which the
27  ALJ found was consistent with the overall evidence, and which he incorporated into plaintiff's
28  RFC. [AR at 29, 283, 302.]

17

1      In this case, both Dr. Curtis and Dr. Grace had long-term treating relationships with plaintiff.
2 The Commissioner's regulations provide that more weight is given to longitudinal opinion
3 evidence. 20 C.F.R. § 404.1527(c)(2). Moreover, as previously discussed, Dr. Curtis is the only
4 source to conduct an extensive battery of psychological examinations. See 20 C.F.R. §
5 404.1527(c)(3) (ALJ gives more weight to opinions based on objective evidence, such as test
6 results). Although Dr. Bagner reviewed Dr. Curtis' report and conducted a single mental status
7 examination himself, he did not administer any other objective psychological tests.[13] As such,
8 especially in contrast to the long-term nature of the treatment relationship between plaintiff and
9 Drs. Curtis and Grace, Dr. Bagner's mental status examination was little more than a "snapshot"
10 assessment of plaintiff's condition at the point in time she presented to Dr. Bagner.

11      With respect to Dr. Hartley's April 2011 findings, Dr. Hartley recites the history of plaintiff's
12 emotional symptoms from Dr. Curtis' June 2010 report, and the findings from Dr. Curtis' mental
13 status examination of the same date, including his assessed GAF score of 45. [AR at 302 (citing
14 AR at 225-28, 230-32).] Dr. Hartley makes no mention of the many psychological assessments
15 administered by Dr. Curtis or the results of those assessments. [Id.] Nor does she make any
16 mention of Dr. Grace's report or treatment notes. [Id.] Apparently, therefore, Dr. Hartley's findings
17 rested primarily on Dr. Bagner's March 2011 consultative examination findings.

18      Under these circumstances, the reasons provided by the ALJ for giving little weight to the
19 opinions of Dr. Curtis and Dr. Grace are not legally sufficient and/or supported by substantial
20 evidence. Even assuming the opinion of Dr. Bagner, based in part as it was on his mental status
21 examination, constituted "substantial evidence," the Social Security regulations still require

22

23     [13]   A mental status examination includes both objective observations of the clinician, as well
24 as subjective descriptions given by the patient. Thus, Dr. Bagner's mental status examination of
plaintiff included, in addition to plaintiff's own statements concerning her mood and other
25 psychiatric symptoms, Dr. Bagner's own observations regarding plaintiff's appearance, behavior,
affect, alertness, and thought processes, as well as assessments he conducted concerning
26 plaintiff's memory, concentration, fund of knowledge, insight and judgment, and abstractions and
judgment. [AR at 281-83.] See Bass v. Colvin, 2014 WL 1330083, at *4 (C.D. Cal. Apr. 3, 2014),
27 citing Clester v. Apfel, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999) (results of mental status
examination provide basis for diagnostic impression of psychiatric disorder, just as results of
28 physical examination provide basis for diagnosis of physical illness or injury).

1  deference to the treating physicians' opinions. See 20 C.F.R. § 404.1527; Soc. Sec. Ruling

2  ("SSR") 96-2p,[14] 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not

3  entitled to controlling weight does not mean that the opinion is rejected."); Orn, 495 F.3d at 633

4  ("Even if [the examining physician's] opinion were 'substantial evidence,' § 404.1527 still requires

5  deference to the treating physicians' opinions").

6      Under the factors set forth in § 404.1527, the treating relationship that Dr. Curtis and Dr.

7  Grace had with plaintiff provides a "unique perspective" on plaintiff's condition. See 20 C.F.R. §

8  404.1527(c)(2); Orn, 495 F.3d at 633. Specifically, the nature and extent of those doctors'

9  relationship with plaintiff adds significant weight to their opinions. See 20 C.F.R. §

10  404.1527(c)(2)(i)-(ii); Orn, 495 F.3d at 633. Here, both doctors maintained an ongoing treating

11  relationship with plaintiff over an approximately two and one-half year period, and their opinions

12  are consistent with each other. Moreover, when viewed in their entirety, both doctors provided

13  ample support for their opinions regarding plaintiff's physical limitations. The ALJ failed to explain

14  how the opinions of plaintiff's treating physicians, based on examinations of plaintiff on numerous

15  occasions over more than two years, is less persuasive than the opinions of the examining

16  physician, whose opinion is based on a one-time examination of plaintiff at a single point in time,

17  and the non-examining psychologist, who primarily based her opinion on the findings of the

18  consulting examiner.

19      In sum, considering the evidence as a whole, including the evidence submitted to the

20  Appeals Council and made part of the administrative record, the ALJ failed to provide specific and

21  legitimate reasons for rejecting the opinions of plaintiff's treating physicians. As a result, the ALJ's

22  RFC assessment is not supported by substantial evidence and remand is required.

23

24

25      [14] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the

26  agency's policies. SSRs are binding on all components of the [Social Security Administration].
    SSRs do not have the force of law. However, because they represent the Commissioner's

27  interpretation of the agency's regulations, we give them some deference. We will not defer to
    SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d

28  1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.

In this case, as discussed above, because there was additional evidence submitted to the Appeals Council after the ALJ's decision, and because the VE may need to consider plaintiff's limitations in light of the opinions of her treating physicians, it is not clear that if the improperly discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

1   In an effort to expedite these proceedings and to avoid any confusion or misunderstanding
2   as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First,
3   the ALJ on remand must reconsider the opinions of Dr. Curtis and Dr. Grace, including the
4   additional documents submitted to the Appeals Council.  In assessing the medical opinion
5   evidence of these doctors, or any other physicians, the ALJ must explain the weight afforded to
6   each opinion and provide legally adequate reasons for any portion of the opinions that the ALJ
7   rejects.  Next, if the ALJ again determines that the opinions of Dr. Curtis and Dr. Grace are
8   entitled to less weight than the opinion of the examining physician, whose opinion is based on a
9   one-time examination of plaintiff at a single point in time, and the non-examining psychologist,
10  who primarily based her opinion on the findings of the consulting examiner, the ALJ should
11  provide legally sufficient explanations for this finding.  If necessary, the ALJ shall reassess
12  plaintiff's RFC, and determine, at step four, with the assistance of a VE if necessary, whether
13  plaintiff is capable of performing her past relevant work.  If she is not so capable, then the ALJ
14  should proceed to step five.

15

16                                           **VII.**

17                                      **CONCLUSION**

18          **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the
19  decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for
20  further proceedings consistent with this Memorandum Opinion.

21          **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
22  Judgment herein on all parties or their counsel.

23          **This Memorandum Opinion and Order is not intended for publication, nor is it**
24  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

25

26  DATED: September _16_, 2014                    _____
                                                              PAUL L. ABRAMS
27                                                   UNITED STATES MAGISTRATE JUDGE

28

                                              21